**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

DAVID AUSTIN ROSES LIMITED,

                Plaintiff,

    v.

GCM RANCH LLC, MIO REN, FEIFEI ZHUO,
AND JOSE JAIMES.

                Defendants.

Case No.: 3:24-CV-00882-B

# DEFENDANTS' SECOND MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     BACKGROUND .................................................................................3

     A.      The First Motion to Compel (Pending) .................................... 3

     B.      The Current Dispute: Expanding Concealment ..................... 3

          1.      Concealing the Inventors ................................................ 3

          2.      The Sham Damages Supplement .................................... 4

          3.      Concealment of Investigation Evidence & Refusal to
              Produce Native Files ........................................................ 4

     C.      The Impasse ...................................................................... 5

III.    LEGAL STANDARD.........................................................................5

     A.      The Mandatory Duty to Disclose Under Rule 26(a) .............. 5

     B.      The Consequence of Failure: Rule 37(c) ................................ 5

     C.      Production of ESI, Native Files, and Metadata ..................... 6

     D.      Mandatory Award of Expenses and Attorney's Fees.............. 6

IV.    ARGUMENT ....................................................................................7

     A.      Plaintiff Must Disclose Individuals with Knowledge of the
         Asserted Patents (Rule 26(a)(1)) ............................................ 7

          1.      Carl Bennett (The Breeding Manager & Key Fact
              Witness) ........................................................................... 7

          2.      David Austin, Jr. (The Sole Living Named Inventor) ................. 7

          3.      Ms. Porter is a Corporate Proxy, Not a Fact Witness, and
              Cannot Cure Plaintiff's Failure to Disclose Key Actors. ............. 8

          4.      The Prejudice of Non-Disclosure .................................. 10

     B.      Plaintiff's Supplemental Damages Calculation is Demonstrably
         False and Must Be Corrected (Rule 26(a)(1)(A)(iii)).............................. 11

C.    Plaintiff Must Disclose and Produce Native Files Under Rule 26 and the ESI Order .................................................................... 12

    1.    Native Files Must Be Disclosed Under Rule 26(a)(1) as Documents "Used" to Support Claims ......................................... 12

    2.    Avenue 1: Production is Mandatory Under Paragraph 4(D) (Reasonable Request) ............................................................. 13

    3.    Avenue 2: "Good Cause" Exists Under Paragraph 3 (Authentication & Accuracy) ........................................................ 13

D.    Plaintiff Faces Exclusion of Evidence Under Rule 37(c)(1) for Failing to Disclose "Likely" Witnesses .................................................... 15

V.    REQUEST FOR EXPENSES AND ATTORNEY'S FEES ................................ 16

VI.    CONCLUSION .................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Brazos River Auth. v. GE Ionics, Inc.*,

   469 F.3d 416 (5th Cir. 2006) ...................................................................................8

*Dotson v. Bravo*,

   321 F.3d 663 (7th Cir. 2003) ..................................................................................12

*Heller v. City of Dall.*,

   303 F.R.D. 466 (N.D. Tex. 2014) ............................................................................6

*Pannu v. Iolab Corp.*,

   155 F.3d 1344 (Fed. Cir. 1998) ...........................................................................1, 2

*Tex. A&M Rsch. Found. v. Magna Transp., Inc.*,

   338 F.3d 394 (5th Cir. 2003) ..............................................................................5, 15

*Trovan, Ltd. v. Sokymat Sa*,

   299 F.3d 1292 (Fed. Cir. 2002) ...............................................................................1

*Union Pump Co. v. Centrifugal Pump Servs., Ltd.*,

   404 F. App'x 899 (5th Cir. 2010) ...........................................................................9

*United States v. Llanez-Garcia*,

   735 F.3d 483 (6th Cir. 2013) .................................................................................14

*Williams v. Sprint/United Mgmt. Co.*,

   230 F.R.D. 640 (D. Kan. 2005) .........................................................................6, 15

**Statutes**

35 U.S.C. § 116 .......................................................................................................1

**Rules**

Fed. R. Civ. P. 26.......................................................................................7, 11, 12, 15

Fed. R. Civ. P. 26(a) ............................................................................................................... 5, 10

Fed. R. Civ. P. 26(a)(1) ............................................................................................ 2, 5, 7, 8, 12, 13

Fed. R. Civ. P. 26(a)(1)(A) ............................................................................................ 4, 5, 7, 8, 15, 16

Fed. R. Civ. P. 26(a)(1)(A)(i) .................................................................................................. 5, 7, 8, 9

Fed. R. Civ. P. 26(a)(1)(A)(ii) ........................................................................................................ 12

Fed. R. Civ. P. 26(a)(1)(A)(iii) ....................................................................................................... 11

Fed. R. Civ. P. 26(a)(3) ..................................................................................................................... 2

Fed. R. Civ. P. 26(e) ...................................................................................................................... 11

Fed. R. Civ. P. 26(e)(1)(A) ............................................................................................................. 11

Fed. R. Civ. P. 30(b)(6) .................................................................................................................... 8

Fed. R. Civ. P. 33(b)(5) .................................................................................................................. 12

Fed. R. Civ. P. 34(b)(2)(E)(ii) .......................................................................................................... 6

Fed. R. Civ. P. 37(a)(5)(A) ..................................................................................................... 6, 16, 17

Fed. R. Civ. P. 37(c) ......................................................................................................................... 5

Fed. R. Civ. P. 37(c)(1) ........................................................................................................ 5, 11, 15

**Other Authorities**

Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment ........................................... 5, 9

Defendants GCM Ranch LLC and Mio Ren ("Defendants") file this Second Motion to Compel and for Sanctions, requesting the Court order Plaintiff David Austin Roses Limited ("Plaintiff") to supplement its Initial Disclosures and provide complete responses to Defendants' Interrogatories and Requests for Production.

## I.    INTRODUCTION

This is a patent infringement case where the Plaintiff is attempting to litigate by ambush. Plaintiff seeks to enforce its patents against Defendants while systematically shielding the individuals who created the patents and the evidence that allegedly proves infringement.

In its pending first Motion to Compel Initial Disclosures, Defendants exposed Plaintiff's concealment of Gareth Minton, Plaintiff's former brand protection manager, who investigated and collected the primary evidence of infringement. Now, Plaintiff has expanded this pattern of concealment to the creation of the patents themselves.

Plaintiff has asserted a staggering twenty (20) patents in this action (ECF Nos. 34–1 through 34–19 and 34–65). Yet, every single one names a **sole inventor**—either David C.H. Austin ("David Austin, Sr."), now deceased, or David J.C. Austin ("David Austin, Jr.").

Accurate inventorship is a fundamental, threshold requirement for patent validity. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998). Under 35 U.S.C. § 116, "[w]hen two or more persons make an invention, they must apply for a patent jointly." *Trovan, Ltd. v. Sokymat Sa*, 299 F.3d 1292, 1301-02 (Fed. Cir. 2002)

1

(noting that § 116 requires joint inventors to apply jointly). Naming a corporate officer other than the true inventor, or failing to name all true inventors, constitutes incorrect inventorship, which **renders a patent invalid**. *See Pannu*, 155 F.3d at 1349.

Despite admitting in Interrogatory No. 5 that **Carl Bennett ("Breeding Manager")** and other unnamed breeders, physically "perform[ed] the crosses" for the Asserted Patents, Plaintiff refuses to identify him or the living named inventor (**David Austin, Jr.**) in its Initial Disclosures. Plaintiff's only justification—that it "do[es] not intend" to call them at trial (Ex. D)—confuses Fed. R. Civ. P. 26(a)(3) (trial witnesses) with Fed. R. Civ. P. 26(a)(1) (fact witnesses) and is a flagrant attempt to shield the individuals whose testimony would **likely invalidate the asserted patents**.

Furthermore, Plaintiff is obstructing discovery on damages and scientific evidence. Rather than relying on the specific audit data in its possession—which quantifies the alleged infringement at **1,043** units (ECF No. 72–3)—Plaintiff has provided a Second Supplemental Initial Disclosures containing a baseless, inflated estimate of **5,000** units (Ex. A).

Plaintiff also refuses to produce the native electronic files for its photographs and DNA analysis (Ex. D). In fact, Plaintiff **failed to even list these critical categories** of investigation documents in its Initial Disclosures, despite attaching dozens of them to its Complaint. This is particularly egregious because Plaintiff relied on these specific text excerpts to **survive a Motion to Dismiss**, arguing that

the accuracy of its DNA data was a matter for discovery (ECF No. 38). Now that discovery has arrived, Plaintiff has failed to even list these documents in its Initial Disclosures and refuses to produce the underlying reports, leaving Defendants unable to test the **very evidence that kept this case alive**. Plaintiff is effectively trying to rely on flattened PDF exhibits filed on the docket while shielding the actual, native evidence from discovery.

Defendants requested these basic disclosures to prepare a defense. Plaintiff refused. Defendants now request an order compelling immediate supplementation.

## II.    BACKGROUND

### A.    The First Motion to Compel (Pending)

On November 24, 2025, Defendants filed their first Motion to Compel Initial Disclosures (ECF No. 72). That motion addressed Plaintiff's refusal to provide contact information for Gareth Minton—the former brand protection manager who investigated and collected the primary evidence of infringement—as well as its initial refusal to provide any non-speculative computation of damages.

### B.    The Current Dispute: Expanding Concealment

Since the filing of the first motion, Plaintiff has not cured these defects but has instead expanded its pattern of concealment in three specific ways:

#### 1.    Concealing the Inventors

Plaintiff has admitted in discovery responses—as documented in Defendants' deficiency correspondence (Ex. B)—that **Carl Bennett "perform[ed] the crosses"**

3

to create Plaintiff's asserted plant varieties. Yet, Plaintiff refuses to list Mr. Bennett or the **sole living named inventor, David Austin, Jr.**, in its Initial Disclosures. Plaintiff's only justification is that it "do[es] not intend to rely on" them at trial—a position that flagrantly violates Rule 26(a)(1)(A).

### 2.    The Sham Damages Supplement

In response to Defendants' pressure regarding damages, Plaintiff served Second Supplemental Initial Disclosures (Ex. A) providing, yet again, a speculative estimate of **5,000** infringing units. This estimate is contradicted by Plaintiff's own internal audit data (previously disclosed to counsel), which documents exactly **1,043** units. Plaintiff is withholding this known, specific data in favor of an inflated and speculative litigation estimate.

### 3.    Concealment of Investigation Evidence & Refusal to Produce Native Files

Plaintiff relies exclusively on flattened PDF images of its DNA analysis and photographs—filed as exhibits to its Complaint (ECF No. 34). Previously, this Court denied Defendants' challenge to these excerpts as premature, noting that challenges to the accuracy of the data were **"inappropriate at the pleadings stage"** and belonged in discovery (ECF No. 38 at 10). Despite this ruling, Plaintiff's Initial Disclosures (Ex. A) **completely omit these categories of documents** from the list of records Plaintiff "may use to support its claims," despite their central role in the Complaint. Plaintiff refuses to produce the native files in discovery despite the express provisions of this Court's E-Discovery Order (ECF No. 46).

4

### C.    The Impasse

Defendants attempted to resolve these issues through detailed deficiency letters sent on November 25, 2025 (Ex. B) and November 28, 2025 (Ex. C). On December 2, 2025, Plaintiff responded by maintaining its refusal to disclose the witnesses or correct the damages calculation (Ex. D). Defendants served a formal Notice of Impasse on December 3, 2025 (Ex. E). The parties are at an impasse.

## III.    LEGAL STANDARD

### A.    The Mandatory Duty to Disclose Under Rule 26(a)

Rule 26(a)(1) creates a mandatory duty for litigants to disclose basic information without awaiting a discovery request. This includes "the name and, if known, the address and telephone number of each individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i). The moving party need only demonstrate the relevance of the information sought. *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment.

### B.    The Consequence of Failure: Rule 37(c)

Under Rule 37(c)(1), if a party fails to provide information or identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial," unless the failure was substantially justified or is harmless. *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

### C.    Production of ESI, Native Files, and Metadata

Rule 34(b)(2)(E)(ii) requires production in a "reasonably usable form." Furthermore, this Court's ESI Order expressly creates two avenues for the production of native files and metadata. First, Paragraph 4(D) mandates that upon a "reasonable request," a producing party "shall produce the document in its native format." *E-Discovery Order* (ECF No. 46) at ¶ 4(D). Second, Paragraph 3 permits the production of metadata upon a "showing of good cause." *Id.* at ¶ 3. Courts have recognized good cause where metadata is necessary to verify the authenticity, source, or accuracy of the evidence. *See Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 646 (D. Kan. 2005).

### D.    Mandatory Award of Expenses and Attorney's Fees

Under Rule 37(a)(5)(A), if a motion to compel is granted—or if the requested discovery is provided after the motion was filed—the Court "must" require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

The award of fees is mandatory unless the opposing party can demonstrate that its nondisclosure was "substantially justified" or that other circumstances make an award of expenses unjust. *Id.*; *see also Heller v. City of Dall.*, 303 F.R.D. 466, 477 (N.D. Tex. 2014). The burden of proving substantial justification rests with the party who failed to make the required disclosure.

6

## IV.    ARGUMENT

### A.    Plaintiff Must Disclose Individuals with Knowledge of the Asserted Patents (Rule 26(a)(1))

Rule 26(a)(1)(A)(i) mandates the disclosure of the name and contact information of each individual likely to have discoverable information—not merely those the disclosing party intends to call at trial.

#### 1.    Carl Bennett (The Breeding Manager & Key Fact Witness)

Plaintiff has admitted in discovery responses—as documented in Defendants' deficiency correspondence (Ex. B)—that "Carl Bennett, the breeding manager... and other members of the breeding department carried out... hands-on aspects... such as performing the crosses" to create Plaintiff's asserted plant varieties.

For four of the nine asserted patents against the GCM Ranch Defendants, the named inventor (David Austin, Sr.) is deceased. Consequently, **Mr. Bennett (as the "Breeding Manager")** is the primary surviving fact witness with direct personal knowledge of the breeding, selection, and distinctiveness of those varieties. Plaintiff's refusal to disclose Mr. Bennett—or any of the "other members" of his department—solely because it **"do[es] not intend to rely on [their] testimony"** is a flagrant violation of Rule 26.

#### 2.    David Austin, Jr. (The Sole Living Named Inventor)

**David Austin, Jr.** is the **sole named inventor** on the remaining five of the nine Asserted Patents against GCM Ranch Defendants. In a patent suit, the inventor possesses **unique, non-substitutable knowledge** regarding conception

7

and reduction to practice. Plaintiff cannot shield its own sole named inventor from Initial Disclosures simply by choosing not to call him at trial.

### 3.    Ms. Porter is a Corporate Proxy, Not a Fact Witness, and Cannot Cure Plaintiff's Failure to Disclose Key Actors.

Plaintiff attempts to circumvent its Rule 26(a)(1) obligations by designating Kate Porter—a witness it admits only "may" have information—while continuing to conceal the individuals who actually performed the work.

Rule 26(a)(1)(A)(i) mandates the disclosure of "each individual likely to have discoverable information." This requirement targets personal knowledge of the events at issue. In contrast, a Rule 30(b)(6) witness testifies to the collective knowledge of the corporation and may be educated on facts they did not personally witness. *See, e.g.*, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). A party cannot substitute a corporate mouthpiece for the actual actors.

Here, the core facts regarding infringement turn on specific, hands-on investigatory acts—test buys, photography, and sample collection—performed by Gareth Minton. The core facts regarding validity turn on the breeding, selection, and conception of the asserted varieties performed by Carl Bennett and David Austin, Jr. **Ms. Porter performed none of these acts.** She is a policy witness who can speak generally to Plaintiff's corporate practices, but she lacks the personal knowledge required to authenticate the evidence, explain the breeding history, or verify the conception of the patents.

By offering Ms. Porter as a placeholder, Plaintiff effectively immunizes the actual facts from scrutiny. Without Messrs. Minton, Bennett and Austin, Defendants cannot probe the methodology of the test buys or the origin of the patents. A corporate designee who merely reviews the file cannot answer questions about what Mr. Minton saw, what he did, or why he left. Plaintiff must disclose the actors, not just the narrator.

### a.    General Knowledge Does Not Satisfy Rule 26

Rule 26(a)(1)(A)(i) requires the disclosure of individuals likely to have discoverable information regarding the "claims and defenses." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. A witness who can only testify generally that "we enforce our patents" cannot substitute for the witnesses who actually gathered the evidence or created the patent.

### b.    The Hearsay Trap

Without the testimony of Mr. Minton (to authenticate the test buys) or Mr. Bennett and Mr. Austin (to verify the breeding history and conception of the asserted varieties), Ms. Porter's testimony regarding these events would be **inadmissible hearsay**. A corporate designee can bind the company to a position, but she cannot testify to the truth of events she did not witness to prove liability at trial. *See Union Pump Co. v. Centrifugal Pump Servs., Ltd.*, 404 F. App'x 899, 907–08 (5th Cir. 2010). Plaintiff cannot use Ms. Porter as a placeholder in Initial Disclosures to shield the actual fact witnesses from scrutiny while planning to rely on their hearsay accounts later.

####    4.    The Prejudice of Non-Disclosure

#####    a.    Forcing Hague Convention Procedures

Plaintiff's refusal to disclose Mr. Bennett and Mr. Austin is not merely a technical violation; it is a tactical maneuver to obstruct discovery. Because Plaintiff is a United Kingdom entity, its officers and employees likely reside outside the subpoena power of this Court.

If these individuals are properly disclosed under Rule 26(a) as persons within Plaintiff's control, Plaintiff must arrange for their depositions without the need for international process. However, by refusing to disclose them, Plaintiff is forcing Defendants to treat the named inventor and breeding manager as third parties, requiring Defendants to initiate lengthy and costly procedures under the Hague Convention on the Taking of Evidence Abroad.

Forcing Defendants to navigate international treaty protocols to depose the named inventor and the breeding manager of the asserted patents—simply because Plaintiff refuses to list them in Initial Disclosures—is unduly burdensome, prejudicial, and a waste of judicial resources. The Court should compel their disclosure to ensure efficient case management.

#####    b.    Plaintiff should not weaponize the discovery rules by using the "Shield and Sword" tactic.

Plaintiff seeks to shield Mr. Bennett and Mr. Austin from Initial Disclosures to prevent Defendants from deposing them regarding the validity of the asserted patents. Yet, Plaintiff undoubtedly intends to use them as a sword—via affidavit or

testimony—if the validity of the patents is challenged on summary judgment or trial.

This is impermissible. Unless Mr. Bennett and Mr. Austin are disclosed now as individuals "likely" to have discoverable information, Rule 37(c)(1) mandates their total exclusion from this case. Plaintiff must choose either to disclose them and subject them to discovery, or hide them and forfeit the ability to use their testimony to defend the validity of the asserted patents.

### B. Plaintiff's Supplemental Damages Calculation is Demonstrably False and Must Be Corrected (Rule 26(a)(1)(A)(iii)).

Plaintiff's recent Second Supplemental Initial Disclosures, which provides a damages estimate of "**5,000** [units]," constitutes a **sham disclosure** that violates the duty of candor under Rule 26(e).

Rule 26(e) requires a party to supplement its disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Implicit in this rule is the requirement that the supplementation itself be truthful and based on the best information available. A party cannot satisfy Rule 26 by supplementing with a number it knows to be false.

Here, Plaintiff is in possession of specific audit data—referenced as "Annexes" in its own settlement correspondence—which quantifies the alleged infringement at exactly 1,043 units (ECF No. 72–3). Yet, in its sworn supplemental response, Plaintiff provided a baseless estimate of **5,000** units (Ex. A). This discrepancy is not a matter of estimation; it is a contradiction. Plaintiff has

11

withheld the specific, known data in its possession in favor of a **litigation-driven fabrication** designed to artificially inflate the case value. Significantly, Plaintiff's supplemental response to Defendants' First Set of Interrogatories pointing to this "5,000 [unit]" estimate was signed only by counsel and was **not verified by the client** as required by Rule 33(b)(5) (Ye Bennett Decl. ¶ 5). This confirms that the inflated figure is a creation of counsel, not a fact attested to by the Plaintiff.

This conduct is sanctionable. Courts have inherent power to sanction parties for submitting false or misleading discovery responses. *See Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003) (affirming dismissal for providing false discovery responses). Plaintiff must be compelled to amend its response to reflect the actual data in its possession (the **1,043** units) and to produce the underlying "Annex" documents that support it.

### C.    Plaintiff Must Disclose and Produce Native Files Under Rule 26 and the ESI Order

Defendants satisfy both distinct avenues for the production of native files established by this Court's ESI Order (ECF No. 46).

#### 1.    Native Files Must Be Disclosed Under Rule 26(a)(1) as Documents "Used" to Support Claims

Plaintiff's obligation under Rule 26(a)(1)(A)(ii) is to provide a copy or description of all documents it "may use to support its claims." Plaintiff attached 66 exhibits to its Second Amended Complaint. Excluding the public patents, trademarks, and informational articles, the remaining dozens of exhibits consist of DNA charts and "test buy" photographs, thereby confirming its intent to use them.

12

However, Plaintiff **failed to identify these specific categories** of documents in its Initial Disclosures (Ex. A at 3–4), much less produce the native files. Instead, Plaintiff has provided only the static, flattened PDF images filed on the public docket as exhibits to its Complaint. Relying on low-resolution PDF "pictures" filed with the Court does not satisfy the obligation to disclose and produce the actual evidence in a reasonably usable form.

Defendants are entitled to the actual evidence Plaintiff intends to present— which, for digital photography and genetic sequencing, is the native electronic file with intact metadata. Plaintiff's failure to disclose the native versions violates Rule 26(a)(1).

### 2. Avenue 1: Production is Mandatory Under Paragraph 4(D) (Reasonable Request)

Paragraph 4(D) mandates that upon a "reasonable request," a party "shall produce the document in its native format." Defendants' request for the native files of exhibits attached to Plaintiff's own Complaint is inherently reasonable. Plaintiff affirmatively chose to rely on these specific photographs and DNA charts to plead liability. It is unreasonable for Plaintiff to use this evidence as a sword in its pleadings while shielding the native files—the only version that can be authenticated—from discovery. Under the plain text of Paragraph 4(D), Plaintiff "shall produce" them.

### 3. Avenue 2: "Good Cause" Exists Under Paragraph 3 (Authentication & Accuracy)

Even under the "good cause" standard of Paragraph 3 of the ESI Order, production of native files is required because, for digital evidence, the file format is the evidence.

### a. Test Buy Photographs (Exs. 59-61):

Plaintiff relies exclusively on flattened PDFs of alleged "test buy" photos filed as exhibits to its Complaint. A PDF of a digital photograph is merely a picture of a picture; it strips the file of the Exchangeable Image File Format (EXIF) metadata that is created automatically by the camera at the moment of capture. This metadata—including the creation date, device model, and GPS coordinates—is the only way to verify when and where the image was created. Without it, Defendants cannot verify when these images were captured, whether they depict Defendants' actual live listings as opposed to cached or manipulated pages, or if they have been digitally altered. *See, e.g.*, *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013) (noting metadata's role in authentication). Plaintiff is asking the Court and Defendants to accept unverified "screenshots" filed on the docket as forensic evidence.

### b. DNA Analysis (Exs. 59-60, 62-63):

Similarly, Plaintiff relies on fragmented text excerpts pasted into its Second Amended Complaint—excerpts Plaintiff specifically **used to overcome a previous dismissal**. When Defendants challenged these excerpts as "inconclusive and incomplete" at the pleading stage, this Court declined to address the issue, noting

14

that challenging the "accuracy of David Austin's allegations... is inappropriate at the pleadings stage" **(ECF No. 38, Mem. Op. & Order at 10)**.

Now that the case has moved to discovery, the time for **testing that accuracy has arrived**. Yet, Plaintiff continues to withhold the underlying DNA reports and native sequencing data, offering only the same context-free text snippets from the Complaint. Plaintiff cannot use these fragments as a shield to survive dismissal and then refuse to produce the actual document necessary to verify them. Defendants' experts establish good cause for the native electronic sequencing data because it is the only way to independently verify the scientific validity of the infringement claims. *See Williams*, 230 F.R.D. at 646.

### D.    Plaintiff Faces Exclusion of Evidence Under Rule 37(c)(1) for Failing to Disclose "Likely" Witnesses

Plaintiff attempts to satisfy its Rule 26 obligations by proffering Kate Porter—a witness it admits only "may" have information—while concealing **Carl Bennett** (the individual it admits performed the actual breeding) and **David Austin, Jr.** (the sole named inventor). This violates the core "likelihood" requirement of Rule 26(a)(1)(A).

If Plaintiff persists in refusing to identify Messrs. Bennett and Austin as witnesses "likely" to have discoverable information, Rule 37(c)(1) mandates that Plaintiff be precluded from using them to supply evidence on a motion, at a hearing, or at a trial. *See Tex. A&M Rsch. Found.*, 338 F.3d at 402.

Plaintiff cannot have it both ways: it cannot hide the breeder and named inventor during discovery to avoid deposition, yet reserve the right to use their

knowledge (via affidavit or declaration) to defend the validity of its patents later. Unless Plaintiff amends its disclosures to identify the witnesses who actually possess the relevant facts, it faces the **automatic exclusion of their testimony**—leaving Plaintiff with no admissible evidence to verify the **conception or breeding** of the asserted patents.

## V.    REQUEST FOR EXPENSES AND ATTORNEY'S FEES

Pursuant to Rule 37(a)(5)(A), if a motion to compel is granted—or if the disclosure or requested discovery is provided after the motion was filed—the Court "must" require the party or attorney advising the conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

An award of fees is mandatory unless Plaintiff's nondisclosure was "substantially justified." Here, Plaintiff's refusal is not justified; it is part of a **pattern of obstruction**.

First, Plaintiff's written refusal to disclose the named inventor (David J.C. Austin) and the breeder (Carl Bennett) solely because it "does not intend to rely on" them is a willful contradiction of Rule 26(a)(1)(A). Second, Plaintiff provided a sham damages estimate of "5,000 [units]" in its sworn disclosures while **suppressing its own internal audit data** showing only 1,043 units. Third, Plaintiff **concealed the very investigation evidence** (DNA reports and photos) it used to survive dismissal, refusing to list them in disclosures or produce the native files.

16

Plaintiff has forced Defendants to incur significant expense to compel the disclosure of the most basic facts of the case—the identity of the creators, the calculation of damages, and the evidence of infringement. This broad concealment is not substantially justified.

Accordingly, Defendants request that the Court award reasonable expenses and attorney's fees incurred in bringing this Motion.

## VI.     CONCLUSION

WHEREFORE, Defendants respectfully request that the Court GRANT this Defendants' Second Motion to Compel and enter an Order, within seven (7) days after entry of the Court's Order:

1. Compelling Plaintiff to supplement its Initial Disclosures to identify Carl Bennett and David J.C. Austin;

2. Compelling Plaintiff to clarify the personal knowledge of Kate Porter and provide her contact information;

3. Compelling Plaintiff to supplement Section C of its Initial Disclosures with a damages calculation based on actual audit data;

4. Compelling Plaintiff to produce native electronic files for all DNA data and photographs;

5. Awarding Defendants their reasonable expenses and attorney's fees incurred in making this Motion pursuant to Rule 37(a)(5)(A); and

6. Granting such other relief as the Court deems just and proper.

17

Respectfully submitted,

Date: December 8, 2025                    /s/ *Jingjing Ye Bennett*
                                          Jingjing Ye Bennett
                                          **YE & ASSOCIATES, P.C.**
                                          3400 N Central Expy, Suite 110-321
                                          Richardson, TX 75080
                                          Tel: 469.410.5232
                                          Fax: 469.751.5507
                                          ATTORNEYS FOR GCM RANCH LLC
                                          AND MIO REN

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendants conferred with counsel for Plaintiff (Travis Bliss) regarding the merits of this motion via detailed correspondence on November 25, 2025 (Ex. B), and November 28, 2025 (Ex. C). Specifically, the parties discussed:

· Plaintiff's failure to identify key fact witnesses Carl Bennett and David J.C. Austin (David Austin, Jr.) in Initial Disclosures;

· The legal insufficiency of Plaintiff's designation of Kate Porter;

· Plaintiff's refusal to provide a damages calculation based on known audit data; and

· Plaintiff's refusal to produce native files for photographs and DNA data.

On December 2, 2025, Plaintiff served its Second Supplemental Initial Disclosures (Ex. A) and a response letter maintaining its refusal to cure these defects (Ex. D).

Defendants served a final Notice of Impasse on December 3, 2025 (Ex, E). The parties have reached an impasse and are unable to resolve these disputes without Court intervention.

Date: December 8, 2025                              /s/ *Jingjing Ye Bennett*
                                                   Jingjing Ye Bennett

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on December 8, 2025.

Date: December 8, 2025

/s/ *Jingjing Ye Bennett*
Jingjing Ye Bennett